UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMERICAN BUILDERS & CONTRACTORS
SUPPLY CO., INC. d/b/a ABC SUPPLY CO., INC.,

                              Plaintiff,

vs.

DAN C. FULMER, INC., DAN FULMER CORP.,
DAN FULMER CONSTRUCTION, INC. d/b/a
DAN FULMER COMPANY, and JAMES A. LA RUEZ,

                             Defendants.

_____

DECISION AND ORDER

20-CV-6099 (CJS)

Plaintiff American Builders & Contractors Supply, Co. Inc. ("ABC Supply") filed this action against Defendants Dan C. Fulmer, Inc., Dan Fulmer Corp., Dan Fulmer Construction, Inc. d/b/a Dan Fulmer Company, and James A. LaRuez (collectively "Defendants") for, among other things, breach of contract. Am. Compl., Mar. 20, 2020, ECF No. 5. The matter is presently before the Court on Defendant James A. LaRuez's motion for summary judgment, which asks the Court to find that there is no legal basis to hold him personally liable. Mot. for Summ. J., June 11, 2021, ECF No. 39. For the reasons stated below, LaRuez's motion for summary judgment [ECF No. 39] is denied. The Court will contact the parties within 14 days of the date of this order to schedule a status conference.

BACKGROUND

Defendant James A. LaRuez has owned a construction company for over thirty years. Pl. Statement of Facts (Ex. 4), 5 (19:11–19), Jul. 19, 2021, ECF No. 43-11. From 1990 to 2004, LaRuez operated as Defendant Dan C. Fulmer, Inc.. Pl. Statement of Facts (Ex. 4) at 5 (20:7–23). LaRuez "ceased operating" Dan C. Fulmer, Inc. in 2004 when he "got in trouble with [New York] 'Workers' Comp.,'" and opened the company Defendant Dan Fulmer Corp.. Pl. Statement of Facts (Ex. 4) at 5 (20:19–23) and 6 (24:12–20). In 2012, LaRuez ceased

operating Dan Fulmer Corp. because he was thinking of retiring, and began operating Defendant Dan Fulmer Construction, Inc. with the idea that his son, Mark, would take over and LaRuez would be a consultant. Pl. Statement of Facts (Ex. 4) at 6 (22:3–8) and 7 (27:2–17). In 2017, LaRuez ceased operating Dan Fulmer Construction, Inc. and began operating Macaluso Enterprises, Limited ("Macaluso Ltd.") because the insurance company had dropped Dan Fulmer Construction, Inc., but LaRuez was able to get insurance under the Macaluso Ltd. name to continue his construction work. Pl. Statement of Facts (Ex. 4) at 6 (22:12–23:9) and 7 (28:6–17).

On June 17, 1997, during the period that LaRuez was operating his construction company as Dan C. Fulmer, Inc., he signed a credit application with Plaintiff ABC Supply as the President of "Dan C. Fulmer Co.," which he indicated was a corporation. Am. Compl. (Ex. A), Mar. 20, 2020, ECF No. 5-1. ABC Supply alleges that, based on this application, it extended significant credit to LaRuez and his company over a number of years. Am. Compl. at ¶ 17–18. In support of the instant action, it has submitted copies of unpaid invoices totaling $361,311.23 for materials sold and delivered to "Dan C. Fulmer Co." between May and December 2019. Pla. Statement of Facts (Ex. A and B), Jul. 19, 2021, ECF Nos. 43-5 and 43-6. On the basis of these unpaid invoices, ABC Supply brings claims against Defendants for: (1) Breach of Contract, (2) Action for the Price, (3) Account Stated, and (4) Restitution/Quasi-Contract (unjust enrichment). Am. Compl. at ¶ 45–67.

LaRuez admits that Defendants ordered the billed goods, that ABC Supply shipped the goods to "Fulmer Entity Job Sites," that the goods were duly delivered and accepted, and that ABC Supply was not notified that the goods had been rejected or acceptance revoked. Compl. at ¶ 32–38; Answer, ¶ 32–38, May 20, 2020, ECF No. 12. However, in the instant

motion for summary judgment, LaRuez argues that he "has never given [ABC Supply] any reason to believe he was purchasing goods in his personal capacity." Mot. for Summ. J., 3, June 14, 2021, ECF No. 40. Therefore, LaRuez asks the Court to find that he signed the credit application with ABC Supply in his capacity as an officer of a legitimate business corporation, and dismiss him from the case on the grounds that he cannot be held personally liable for the unpaid invoices. *Id.* at 8.

SUMMARY JUDGMENT STANDARD

"[T]he trial court's task at the summary judgment motion stage . . . . is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Hence, summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks omitted).

"A party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)–(2). Such evidence must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nevertheless, the non-movant cannot oppose a properly-supported summary judgment motion with mere assertions or

"[s]tatements devoid of specifics, but replete with conclusions." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).

DISCUSSION

In his motion for summary judgment, LaRuez maintains that there is no legal basis to hold him personally liable for the goods ordered from ABC Supply in 2019. Mem. in Supp., 3–8, June 14, 2021, ECF No. 40. LaRuez argues that ABC Supply cannot use a mere clerical error – such as the listing of Dan C. Fulmer, Co. on his credit application instead of Dan C. Fulmer, Inc. – to render him personally liable for purchases of a corporation. *See, e.g.,* Def. Statement of Facts (Ex. A), ¶ 5, June 11, 2021, ECF No. 39-2. Further, he argues that ABC Supply has not shown that they were under an actual misapprehension about the identify of his company at the time the credit application was completed, or produced evidence that he acted with fraudulent intent. Mem. in Supp. at 7–8.

ABC Supply, though, maintains that LaRuez can be held personally liable for the payments on one of two theories. In particular, in their various papers, ABC Supply suggests that either LaRuez may be held personally liable because he was intentionally holding himself out as an agent of a non-existing entity (i.e., Dan C. Fulmer Co.), or because he was acting as the principal of a non-disclosed entity (i.e., Macaluso Ltd.). *See* Am. Compl. at ¶ 17; Pl. Mem. in Opp., 1, Jul. 19, 2021, ECF No. 43.

Legal Principles

The Court notes that both sides address ABC Supply's claims under New York law, without reference to any applicable choice of law issues. Therefore, the Court finds implied agreement that New York law applies in this case. *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls,

4

and such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks and citation omitted).

Under New York law, "[a]s a general rule, a person entering into a contract on behalf of a nonexistent corporate entity may be held personally liable on the contract." *Commissioners of State Ins. Fund v. Staulcup*, 95 A.D.3d 1259, 1261 (N.Y. App. Div. 2012). However, when an existing corporate entity enters a contract using a trade name, or when there is an inadvertent naming error in the contract, "'the misnomer is held unimportant.'" *See Spanierman Gallery, PSP v. Love*, 320 F. Supp.2d 108, 111 (S.D.N.Y. 2004) (quoting *Mail & Express Co. v. Parker Axles, Inc.*, 204 A.D. 327, 329 (N.Y. App. Div. 1923)). "This is particularly true when the misnomer caused no confusion." *Henessey Food Consulting LLC v. Prinova Sols., LLC*, No. 520CV806FJSTWD, 2022 WL 160272, at *3 (N.D.N.Y. Jan. 18, 2022) (quoting *Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 676 F. Supp.2d 100, 109 n.6 (E.D.N.Y. 2009) (internal quotation marks omitted)). "Accordingly, absent an allegation that, at the time of the contract, a plaintiff was under an actual misapprehension that there was some other, unincorporated group with virtually the same name as that of the actual business entity, 'the Court will not permit the Plaintiff[] to capitalize on [a] technical naming error in contravention of the parties' evident intentions.'" *Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C.*, 455 F. Supp.2d 236, 242 (W.D.N.Y. 2006) (quoting *Spanierman Gallery*, 320 F. Supp.2d at 112)).

On the other hand, "the agent for an undisclosed principal is liable on any contracts that he or she made on behalf of the principal." *J.P. Endeavors v. Dushaj*, 8 A.D.3d 440, 442 (N.Y. App. Div. 2004) (citing, *inter alia*, *Ell Dee Clothing Co. v. Marsh*, 160 N.E. 651 (N.Y. 1928)). To avoid such liability, the agent must disclose the identity of his principal "at or before

the time when the contractual agreement is made final." *Orient Mid–East Lines v. Albert E.*

*Bowen, Inc.*, 458 F.2d 572, 576 (2d Cir. 1972)). "The purpose of this doctrine is to make sure

a party entering a contract knows precisely with whom it is dealing; it protects a party from

'unknowingly being required to do business with an entity incapable of meeting its contractual

obligations.'" *Ads Plus Advert., Inc. v. Ault*, 928 F. Supp.2d 683, 690 (W.D.N.Y. 2013) (quoting

*Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp.2d 652, 666 (S.D.N.Y. 2008)).

Application

In the present case, LaRuez has failed to show that he is entitled to summary

judgment. To be sure, LaRuez has presented evidence that his original business corporation,

"Dan C. Fulmer, Inc.," is still active in the New York Department of State database of corporate

and business entities, and he makes a reasonable argument that the listing of Dan C. Fulmer

Co. on the credit application was a mistake. *See* Def. Statement of Fact (Ex. D), 15, June 11,

2021, ECF No. 39-2. Further, it seems clear that ABC Supply always knew that it was dealing

with a construction business led by LaRuez, and that he was acting on behalf of a corporate

entity rather than himself. In that regard, LaRuez finds support not only on the credit

application itself, but also in the deposition testimony of Jason Boyce, the ABC Supply sales

representative responsible for working with LaRuez and his companies for over a decade.

Def. Statement of Fact (Ex. B), 8 (7:11–12), June 11, 2021, ECF No. 39-2. Boyce testified

that LaRuez only had one account with ABC Supply, and acknowledged that the company

had issued LaRuez's companies at least two rebate checks based on the high volume of

purchases: one made out to "Dan Fulmer Construction, Incorporated" in March 2015, and

one to "Dan C. Fulmer Company" in February 2016. Def. Statement of Fact (Ex. B) at 7 (9:4–

10:21). Boyce remembered that the name of LaRuez's company changed at some point in

their business relationship, but couldn't recall the specifics and admitted that he didn't pay close attention to the name on the account. Def. Statement of Fact (Ex. B) at 9 (33:4–11).

Nevertheless, ABC Supply has demonstrated that there is a genuine dispute of material fact regarding which corporate entity LaRuez represented in their 2019 business dealings, and whether he properly disclosed that entity. First, although each of ABC Supply's unpaid invoices indicates the goods were sold to "Dan C. Fulmer Co.," which LaRuez argues to be a typographical error for "Dan C. Fulmer, Inc.," LaRuez agreed at his deposition that he "ceased operating Dan C. Fulmer, Inc. in 2004." Pl. Statement of Fact (Ex. 4) at 6 (20:21–23). Moreover, ABC Supply has produced "Meeting Minutes of Dan C. Fulmer, Inc." from January 2013 that state "Dan C. Fulmer, Inc. is no longer in operation . . . ." Pl. Statement of Fact (Ex. C), 1–349, Jul. 19, 2021, ECF No. 43-6; Pl. Statement of Fact (Ex. 1), 5, Jul. 19, 2021, ECF No. 43-8.  Second, LaRuez also admitted that he opened a new company, Macaluso Ltd., in 2017 when his third company, Dan Fulmer Construction, Inc., had been dropped by its insurance provider and he needed to insure under a different name to continue his construction operations. Pl. Statement of Fact (Ex. 4) at 8 (28:11–17). Yet ABC Supply has produced an affidavit from its National Debt Recovery Manager, Kris Citera, stating that she found no reference to any company resembling Macaluso Ltd. in the records associated with LaRuez's account. Citera Aff., ¶ 8, Jul. 19, 2021, ECF No. 43-3.

ABC Supply's production of evidence suggesting that Dan C. Fulmer, Inc. is no longer in operation, when paired with LaRuez's admission regarding his formation of Macaluso Ltd. and the absence of any mention of Macaluso Ltd. in ABC Supply's records, raises genuine disputes of fact regarding the entity for which LaRuez was purchasing goods in 2019, and whether those entities had been properly disclosed. As indicated in the recitation of relevant

legal principles above, these facts are material to the determination of whether or not LaRuez

can be held personally liable for payment for the goods.

CONCLUSION

For the foregoing reasons, it is hereby, ORDERED that Defendant James LaRuez's

motion for summary judgment [ECF No. 39] is denied. The Court will contact the parties within

14 days of the date of this order to schedule a status conference.

SO ORDERED.

Dated:       February 28, 2022
             Rochester, New York

ENTER:

HON. CHARLES J. SIRAGUSA
United States District Judge